No. 33,481

T. C. Russell, *Appellee,* v. The State Highway Commission of the State of Kansas, *Appellant.*

No. 33,482

John S. Stephens, *Appellee,* v. The State Highway Commission of the State of Kansas, *Appellant.*

(73 P. 2d 29)

Opinion filed November 6, 1937.

*Lester Goodell,* assistant attorney general, *Robert Osborn,* of Stockton, *C. C. Casey,* of Topeka, *Woodrow B. Morris,* of Oxford, and *Donald Corson,* of Kansas City, for the appellant.

*Blake A. Williamson, James K. Cubbison, Lee Vaughan, Jr.,* all of Kansas City, and *P. G. Wadham,* of Marysville, for the appellees.

*S. C. Bloss,* of Winfield, and *A. J. Herrod,* of Kansas City, as *amici curiae.*

The opinion of the court was delivered by

HUTCHISON, J.: The two above-entitled cases are in every way separate and distinct. They were tried separately, briefed and submitted to this court on appeal separately, and have never in any way been consolidated. However, since they both involve the same law points, there is no occasion for two separate opinions.

They are both highway condemnation cases, where the state highway commission, on March 16, 1936, filed a petition in the district court of Wyandotte county to condemn land belonging to these two landowners, their grantors and others for the purpose of widening a certain highway running west of Kansas City. The request was granted and condemnation commissioners were appointed who appraised the property desired to be taken for widening the highway, and on May 12, 1936, filed their separate appraisals in the office of the clerk of the district court of said county.

The landowners in each of these cases being dissatisfied with the amount of the appraisal in their respective cases, each filed a notice of appeal and an appeal bond with the clerk of the district court. Each case was separately tried by a jury and verdict was returned and judgment was rendered thereon for the landowner for the amount named in each verdict, which was larger than the appraisal in each case. Thereafter several motions were filed by the state highway commission, including a motion for a new trial, all of which were overruled on December 12, 1936. On January 7, 1937, the court heard and overruled a motion of the state highway commission to vacate the judgment and dismiss the appeal because the court was without jurisdiction of the subject matter, because no sufficient bond had been filed or given as required by law.

Thereafter, on the —— day of January, 1937, a notice of appeal

was served and filed in each case by the highway commission. The landowners in each of these two cases in August, 1937, filed in, and presented to, this court a motion to dismiss the appeal to this court because the notice was insufficient to comply with the requirements of the statute, G. S. 1935, 60-3306, in that it entirely omitted the words "to the supreme court," and also for the following additional reasons:

"A portion of the appeal is insufficient and void insofar as it attempts to appeal from the adverse ruling of the district court on the motion to vacate judgment.

"(a) As such adverse ruling was not a final order.

"(b) The question attempted to be raised in said motion was not presented to the trial court until after the motion for new trial had been ruled upon and judgment rendered for appellee, and was, therefore, waived by appellant."

These motions presented in August, 1937, to dismiss the appeal were at that time overruled, but with the privilege of again presenting and arguing them when the appeals would be heard on the merits in October, 1937.

The notice of appeal in the Stephens case, No. 33,482, was as follows:

"NOTICE OF APPEAL

"To John S. Stephens and ——— Stephens, his wife, and Blake Williamson and J. K. Cubbison, their attorneys of record:

"Take notice that the undersigned, the State Highway Commission of Kansas, defendant, does and had appealed from the decision rendered and made in the above-entitled action on the [12th] day of December, 1936, whereby it was by said court decided, ordered and adjudged that defendant's motions to set aside answers to special questions, for judgment notwithstanding the verdict in answers to special questions for new trial, and to vacate the judgment be overruled; and from all intermediate orders and rulings of the court made in the trial of the said cause adverse to this defendant; and from the judgment in said cause."

The appeal was attempted to be taken under G. S. 1935, 60-3306, the first part of which section is as follows:

"Appeals to the supreme court shall be taken by notice filed with the clerk of the trial court, stating that the party filing the same appeals from the judgment, order or decision complained of to the supreme court, and if the appeal is taken from only a part of the judgment, or from a particular order or decision, then by stating from what part of the judgment, or from what particular order or decision the appeal is taken."

The notice does fail to state therein that the appeal was being taken "to the supreme court," as stated in the statute above quoted. The landowners, appellees, cite in particular two cases, *Brockman*

*v. Bayman,* 135 Kan. 238, 10 P. 2d 31, and *Tucker v. Tucker,* 97 Kan. 61, 154 Pac. 269, both adhering to a strict rule of compliance with statutory requirements. The former concerned an appeal from . the court of a justice of the peace where a required notice was entirely omitted and this court declined to accept and consider the language of the bond given as affording sufficient notice to comply with the requirement of the statute that a notice of appeal was given. In the Tucker case, above cited, it was held that a notice of appeal which was "from the judgment and decision of this court entered herein about April 17, 1914," was filed too late to appeal from that judgment which was rendered more than seven months earlier, although it was filed only five days after the overruling of the motion for a new trial.

It is stated in 4 C. J. S. 1060 that—

"When there is but one court to which an appeal can be taken, and the law fixes the term at which a cause shall stand for hearing in the appellate court, the omission to state the court or the term is not grounds for dismissal. Even when, on account of the complexity of the appellate court procedure, designation of the appellate tribunal would be proper, its omission is but an irregularity, to be disregarded if respondent has not been misled."

No one could be misinformed or misled by this omission, for there was no court other than the supreme court to which such an appeal could have been taken.

The notice of appeal covers rather in detail all orders and rulings, and if some of them should not be final orders, or not be subject to appeal, that would not require the appeal to be dismissed. We therefore conclude that the motion to dismiss the appeal from the rulings in the district court to this court in the Stephens case should be overruled.

The only differences between the Stephens case and the Russell case, No. 33,481, in the particulars just above discussed are in the facts that in the latter case the notice is addressed to T. C. Russell and —— Russell, his wife, as well as the attorneys, who are the same as those in the Stephens case, and that through an apparent clerical error there is omitted from the notice of appeal the following language which was contained in the notice of appeal in the Stephens case, immediately following the word "motions," namely, "to set aside answers to special questions"; and a third difference to which our attention is called in the briefs is that the date of the decision is incorrect. It is apparently incorrect in the printed abstract, but in the records filed in the office of the clerk of this court

the date is the same as in the Stephens case. Even if the date were wrong, the subsequent reference to all intermediate orders and rulings would be comprehensive generally and include the judgment, and the omitted clause would not in our judgment make any difference in the rulings or the application of the principles and authorities stated in the Stephens case.

As stated above, the highway commission, at the conclusion of the trial in each of these cases in the district court, raised the question of the jurisdiction of the trial court by filing a motion to vacate the judgment rendered in the district court because of the failure of the landowners to file a legal appeal bond in their attempt to appeal to the district court from the award of the condemnation commissioners. The landowners insist that the highway commission has waived its right to raise this question and is estopped to do so after appearing in district court and acquiescing in the order of the proceedings until the cases had been fully tried, judgments rendered and motions for new trial had been overruled. The motion which the highway commission filed to raise this question and dismiss the appeal to the district court in the Russell case, No. 33,481, was as follows:

"Comes now the state highway commission of Kansas, by its attorneys, and moves the court for an order vacating and setting aside the judgment in favor of plaintiff in this cause for the reason that said court was without jurisdiction of the subject matter because no sufficient bond to secure the costs of the appeal has been filed as required by law, and for the further reason that said bond was not approved by the clerk of the district court as provided by law."

The motion in the Stephens case, No. 33,482, was just the same except it does not have the last clause about the failure of the clerk to approve the bond.

G. S. 1935, 68-413, gives to the state highway commission the right of eminent domain to acquire land for highway purposes, and directs that such right when exercised shall be in accordance with the provisions of article 1, chapter 26, of the Revised Statutes of 1923. Chapter 26, article 1, or G. S. 1935, 26-101, provides that all corporations except railroad and interurban railway corporations which exercise such right—

". . . shall present to the district court of the county wherein the land is situated, or to the judge thereof, a petition setting forth the purpose for which the land is sought to be acquired, a description of each lot and parcel of ground and the name of the owner of each lot and parcel of ground as shown by the records of such county. The court or the judge thereof shall

examine said petition and determine whether the petitioner has the power of eminent domain and whether said lands are necessary to its lawful corporate purposes, and if found in the affirmative, such findings shall be entered in the record and the court thereupon shall appoint three disinterested house-holders of said county to view and appraise such lots and parcels of ground. Such appraisers shall take an oath to well and truthfully make such appraisal and shall report their appraisement of each tract in writing, under oath, to the said court or judge thereof, and the same shall be filed with the clerk of the district court."

The next section provides for an appeal from such appraisal in the following language:

"If the petitioner or the owner of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions." (G. S. 1935, 26-102.)

Attention is properly directed to the last clause of the section last quoted to show that not until the proper notice and bond are filed does the proceeding become an action to be docketed and tried the same as other actions. This feature is worthy of consideration to avoid the conclusion that the original request of the highway com-mission for the appointment of appraisers by the district court, or the judge thereof, gives the district court anything in the nature of jurisdiction of the action that may follow thereafter upon appeal. Until the giving of the required notice and bond, there is no action existing to be docketed or tried. So the jurisdiction of the district court is acquired in such actions by the filing of the required notice and bond. The statute, in addition to the notice of appeal, requires a "bond for the costs thereof," which is to be approved by the clerk. The salient parts of the bond given in the Stephens case, No. 33,482, are as follows: the first paragraph in the usual form of a bond con-tains this provision—

". . . in the penal sum of fifty dollars ($50), to the payment of which well and truly to be made, we hereby bind ourselves, our executors and ad-ministrators firmly by these presents."

The last paragraph but one speaks of the landowner feeling him-self aggrieved by the assessment and attempts to appeal, and the last paragraph of the bond is as follows:

"Now, therefore, if the said John S. Stephens shall prosecute his appeal to effect and without necessary delay and if judgment rendered against him on appeal will satisfy such judgment and costs, then this obligation to be null and void, otherwise to be and remain in full force and effect."

The bond in the Russell case, No. 33,481, is exactly the same except that it was executed by the former landowner, who later conveyed it to Russell. Bonds in this form are surely not bonds for the costs of the appeal. They are only obligations to satisfy a judgment and costs, and then only to the extent of fifty dollars. We are not cited to any decision on this question under the language of this statute (G. S. 1935, 26-102), but numerous decisions have been rendered as to such bonds where they are used for appeal to the district court from judgments rendered in the court of a justice of the peace where substantially the same language is used (G. S. 1935, 61-1002), the language being that the bond shall be given "to secure the costs of the appeal."

In the case of *Auto Trunk Co. v. Hahn,* 138 Kan. 36, 23 P. 2d 585, it was held:

"To appeal an ordinary civil action from a justice of the peace, or city or county court to the district court, under chapter 229 of the Laws of 1931 (R. S. 1931 Supp. 61-1001 *et seq.*), two things are essential: (1) The filing of the notice of appeal, as required by R. S. 1931 Supp. 61-1001, and (2) the giving of a bond 'to secure the cost of the appeal,' as provided in R. S. 1931 Supp. 61-1002. Both of these are essential to perfect the appeal and an attempted appeal where the bond above mentioned was not given was properly dismissed.

"Where an attempt is made to appeal an ordinary civil action from a justice of the peace, or city or county court, to the district court, and no attempt is made to give bond to secure the cost of the appeal, as required by R. S. 1931 Supp. 61-1002, there is no bond which can be amended, and after the time for appeal has expired it is too late to give a new bond." (Syl. ¶¶ 1, 2.)

This construction was adhered to in the rehearing reported in 139 Kan. 17, 29 P. 2d 1115.

In the case of *Ohio Hydrate & S. Co. v. H. W. Underhill C. Co.,* 141 Kan. 213, 40 P. 2d 337, a bond not in compliance with the requirements of the statute to appeal a case from the court of a justice of the peace to the district court was given, and the parties and the district court had proceeded upon the assumption that an appeal had been duly taken, so that nothing was done by the court or counsel inconsistent with the jurisdiction of the court by appeal or sufficient to invoke original jurisdiction, and after judgment was rendered and after the submission of the motion for new trial but before decision thereon a motion was made to dismiss on account of the fact that the court had no jurisdiction, and it was held that such motion to dismiss was properly allowed. A similar ruling, and for the same reason, was made in *Morse v. Schaake,* 141 Kan. 473,

41 P. 2d 1009, and in *Owen-Fields v. Allen W. Hinkel D. G. Co.*, 143 Kan. 184, 53 P. 2d 496.

In *Culp v. Feyh*, 138 Kan. 854, 28 P. 2d 734, in the same kind of an appeal it was held that a deposit of cash "is insufficient to constitute an appeal bond."

Cities in this state have the right of eminent domain with reference to the improvement of streets, and appeals are allowed by G. S. 1935, 12-634, in the same manner as from judgments of a justice of the peace, and it was held in *Jensen v. City of Chanute*, 146 Kan. 162, 68 Pac. 1080:

"Where a party seeks to appeal from an award of damages to adjacent property caused by change in the grade of a city street, an appeal bond which does not conform to the statutory requirements does not confer jurisdiction on the district court to review the award." (Syl. ¶ 1.)

When a bond is given that is not in conformity with the requirements of the statute, it does not give jurisdiction, and is as far as jurisdiction is concerned practically the same as if no bond whatever had been given.

The case of *St. L. K. & S. W. Rly. Co. v. Morse*, 50 Kan. 99, 31 Pac. 676, cited by both parties, was a railroad condemnation case where the board of county commissioners under the statute passed upon the right to condemn and made the appraisement, from which an appeal was attempted but was not done in conformity with the requirements of the statute, and it was held that the bond was void and did not effect an appeal from the award, and it was further held that a consent to a continuance of the case and any appearance or the making of the motion to dismiss would not constitute a waiver.

Appellees insist strongly that appellant in these cases has waived whatever rights it had by its appearance in the trial of the merits thereof and by not presenting its motion to dismiss before the decision on its motion for a new trial. Their reasoning is largely based upon careful discrimination in the language of opinions like the last one cited and in some texts, but the general rule is against the appearance or acts of parties giving a court jurisdiction of the subject matter of an action or delay in raising the jurisdiction question being an estoppel. It was held in *Edwards v. City of Neodesha*, 110 Kan. 492, 204 Pac. 708, that the denial of a motion to dismiss was not in itself an appealable order. In the instant cases the whole matter, including trial and judgment, is before us, as well as the mo-

tion to dismiss, and either court at any time can act upon a motion to dismiss for want of jurisdiction of the subject matter or the court can itself raise such question on its own motion.

In 4 C. J. S. 126 it is said:

"As jurisdiction cannot be conferred on an appellate court by consent of the parties, want of jurisdiction cannot be waived by them, but may be taken advantage of at any time, and jurisdiction cannot be supplied by estoppel or laches."

Appellees cite the section immediately preceding the above-quoted section, which treats of appeals to courts having original jurisdiction and of waiver of irregularities. The district court was not presented with an original matter. The appraisals had been made and the amount was for consideration in the district court. In such cases the orders or rulings on jurisdictional matters are subject to review by the trial court even if it did not have general jurisdiction of the subject matter. (4 C. J. S. 123.) In 4 C. J. S. 128, as to such matter on its own motion, it is said:

". . . It will not ignore a want of jurisdiction because the question is not raised or discussed by either party, but will dismiss the appeal (infra, ¶ 1355) of its own motion (infra, ¶ 1368), or will stay the proceedings or otherwise notice the defect."

In *Armour v. Howe*, 62 Kan. 587, 64 Pac. 42, it was held:

"When a district court, without jurisdiction of the subject matter of an action, renders a judgment therein, this court will not entertain proceedings in error to reverse such judgment." (Syl. ¶ 2.)

The case of *Hartzell v. Magee*, 60 Kan. 646, 57 Pac. 502, was a case of an attempted appeal from a judgment rendered in the district court to the court of appeals without a proper summons in error, and it was held by this court that—

"The fact that a defendant in error includes in his brief arguments on the merits as well as arguments for the dismissal of the proceeding for want of jurisdiction will not estop him to deny the jurisdiction of the court.

"Parties to a proceeding in error cannot by voluntary appearance, or even by agreement, confer upon an appellate court power to hear and determine a proceeding brought after the expiration of the time limited therefor." (Syl. ¶¶ 1, 2.)

Appellees insist that the overruling of the motion to vacate the judgment and dismiss the appeal is not a final order and one from which an appeal can be taken and of which the supreme court has appellate jurisdiction. Even if we accept this theory and reasoning when applied to it during the progress of the case, it would not pre-

vent such a ruling from being a final order as specified in the section defining appellate jurisdiction of the supreme court (G. S. 1935, 60-3302) when it was an order made at the close of the trial in the district court. The distinction was made in *M'Culloch v. Dodge,* 8 Kan. 476, as to a final order and one which was made while the suit was still pending in the district court and before any judgment was rendered.

In conclusion we may quote a general statement on the subject of appeals, the question of estoppel, and the duty of the appellate court from the Tucker case, *supra,* where it was said:

"This jurisdiction is vested by statute only, and no estoppel, laches or informality of a party can confer it. Neither does failure to raise the question relieve us of the duty to decline, even of our own motion, the exercise of jurisdiction which we do not possess." (p. 62.)

The bond given by the landowners in each case for the purpose of appeal was insufficient and void, and consequently no appeal was effected. The appearance of the highway commission and participation in the trials did not waive the right to raise at any time the question of jurisdiction of the district court of the subject matter of the actions, and the overruling of the motions of the appellant to vacate the judgments and dismiss the appeals for want of jurisdiction of the subject matter was error which is reviewable in this court and necessitates the reversal of the ruling on said motions in the district court.

The judgments rendered in both cases in the district court are reversed and the causes are remanded with directions to vacate the judgments and dismiss the appeals in both cases.

WEDELL, J. (dissenting) : In utmost deference to the opinion of the majority I cannot concur in the conclusion reached or the reasoning employed therein. That opinion is based on the theory the bond was void and that the district court could acquire no jurisdiction of the subject matter unless the bond complied strictly with the provisions of G. S. 1935, 26-102. With that theory I cannot agree. If that conception be sound, then the judicial determination by the district court, prior to the appeal, that petitioner had the power of eminent domain, that the lands were necessary for its corporate purposes, the appointment of appraisers, and their determination of the amount of damages to the owner, were all a futile gesture, a complete nullity, and petitioner never became vested with title or right of possession and the owners never became divested of the title to

their land.  The procedure provided for condemnation proceedings by the state highway department under G. S. 1935, 26-101, is essentially and fundamentally different from that provided by sections for condemnation by cities.  It differs fundamentally from appeals from condemnation proceedings by county commissioners, cities, and from appeals from a justice-of-the-peace court to the district court. It is not an appeal to an appellate court from the ruling of an inferior court or from the decision of bodies or commissions authorized to make appraisals.  In the instant case the appeal is within the same court.  It is simply an appeal from the decision of the appraisers which that very court or a judge thereof appointed.  The reasoning underlying the decisions cited in the majority opinion on the sufficiency of an appeal bond to invoke, for the first time, the jurisdiction of the district court is of necessity not applicable and hence cannot control the present question.

An analysis of G. S. 1935, 26-101, discloses that the condemnation proceeding in the district court begins and ends in that court.  That is true irrespective of whether an appeal is taken from the decision of the appraisers or not.  Under this statute the first step required to be taken is the invoking of the jurisdiction of the district court. There is no other method.  It is the foundation for all other procedure, including the appeal from the decision of the appraisers. Jurisdiction having been acquired by the district court, it is not lost by reason of the fact one of the parties may be aggrieved by the decision of the appraisers and appeals therefrom for the purpose of having the damages determined by a trial in the same court.  It is not an appeal to the district court.  The jurisdiction of the district court embraces both the appeal and the procedure prescribed in G. S. 1935, 26-101.

I cannot agree to the theory of the majority opinion that the district court acquired no jurisdiction of the subject matter unless and until an appeal was perfected under G. S. 1935, 26-102, from the decision of the appraisers.  That section provides for a trial of the issue of damages only in the event either party is aggrieved by the appraisal.  To say the district court, prior to an appeal from the decision of the appraisers, had no jurisdiction over the parties and subject matter under the procedure prescribed in G. S. 1935, 26-101, alone, is to completely overlook the plain and sweeping provisions of that section.  Under the first section, petitioner, who now objects to the jurisdiction of the district court after a complete and

final trial of the actions, had itself invoked the jurisdiction of the district court. It asked that court to judicially determine whether it had the power of eminent domain, whether the lands in fact were necessary to its lawful corporate purposes, and if such facts were found in the affirmative to enter such findings in its record. It further invoked the jurisdiction of that court by asking and obtaining the appointment of appraisers. Those appraisers were required to take an oath to well and truly make such appraisal and to report their decision under oath to the court or judge which appointed them and to make such report a part of the permanent court records. That report became a part of the court records through which title to the land would be established for all time to come.

The appraisers were required to give to the owners of the land the necessary notice in writing and by publication of the time and place where they would assess the damages for the land taken. Such notice obviously contemplated a hearing at which the owners should have an opportunity to be heard on the subject of damages. If that was not the purpose of the notice as to time and place of such assessment, it would be a useless gesture. It will hardly be contended that after such notice to the owners and after the appraisal by the agents of the court, there was any want of jurisdiction over the parties and the entire subject matter. In fact, the statute expressly provided that in the event petitioner does not within thirty days comply with all the terms of such condemnation or appeal therefrom, the district court shall render *judgment* against the petitioner for the costs of the proceeding, including appraisers' fees as in *other cases*. Moreover, whether the petitioner accepts or rejects the appraisal, the district court fixes the fees of the appraisers. If the petitioner desires to acquire the land at the appraised price it must within thirty days deposit with the clerk of the district court the total amount of such appraisement, pay the court costs and appraisal fees. Upon doing so, not only the title to the land vests immediately in the petitioner, but the petitioner is entitled to the immediate possession and all remedies provided by law for the security of such title and possession. We thus find in G. S. 1935, 26-101, a complete procedure in the district court to divest title and to vest title and possession and to determine damages for land taken. Unless the owner acts, these things become a finality within thirty days and from that finality there is no later recourse.

Now, the legislature intended that if either of the parties was dissatisfied with a certain portion of the special proceeding, that is, the decision of the appraisers, he should have the right to a trial on that question only. (G. S. 1935, 26-102.) No right was reserved to the landowner to raise any question concerning the petitioner's power of eminent domain or whether the lands were necessary to petitioner's lawful corporate purposes. In those respects the district court had exercised its jurisdiction and its decision was final. In order to conform with regular procedure in civil cases the statute provides for the docketing of the appeal and for a trial as in other actions. (G. S. 1935, 26-102.) Of course, if there was to be a trial the appeal would be properly docketed as an action. Now, the majority opinion reasons that notwithstanding the same question, namely, that of damages, and between the same parties and concerning the same land, and in the same court, was to be decided by trial instead of by a special proceeding, over which special proceeding the district court already had exercised jurisdiction, the primary purpose and function of the bond is still to vest the court with jurisdiction. I do not think so. The majority opinion concludes that the bond not being drawn in accordance with the exact wording of the statute, no jurisdiction over the subject matter was invoked and hence there could be no trial. To my mind that is entirely too strict an interpretation of the intent and purpose of the statute, if indeed it can be reasonably so interpreted at all. I am opposed to an interpretation of a statute which denies to the parties the right to be heard on the merits of a question unless there is no escape from such construction. Such construction, in my opinion, is not only unnecessary in the instant case, but in view of all the circumstances, unreasonable. The mere fact the statute provides that on appeal the proceedings shall be docketed and tried as an action, does not alter the pendency of a special proceeding in that court. It does not change the parties, the land, nor the issue to be decided. The provision for the docketing of the appeal and for a trial, the same as in other actions, does not divest the district court of jurisdiction previously exercised. Under these circumstances, a fair interpretation of the purpose and function of the bond is that it is required for the protection of the payment of court costs and not that it is required as an instrumentality for invoking the jurisdiction of the court. Instead of petitioner raising the question of the sufficiency or validity of the bond by timely objection, it remained silent throughout both trials. The owners having received verdicts in substantial sums in

excess of the appraisal, petitioner then sought to vacate the judgments. Had the verdicts been in an amount less than the appraisals, petitioner would undoubtedly not be here urging the want of jurisdiction in the district court. What is here said is not out of harmony with the reasoning underlying the decisions in the cases cited in the majority opinion. Those decisions are not applicable where the court to which the appeal is taken is the same court in which the special proceeding is then pending and in a court which has already exercised its jurisdiction over the parties and subject matter as contemplated that it should exercise its jurisdiction under the method provided for the special proceeding. The issues raised on the appeal should be decided on their merits.

SMITH and ALLEN, JJ., join in this dissent.