No. 29,676.

SAM F. STEWART and EMMA J. STEWART, *Appellees*, v. THE MARLAND PIPE LINE COMPANY (now THE CONTINENTAL PIPE LINE COMPANY), *Appellant*.

(297 Pac. 708.)

No. 29,677.

JOHN T. FERRITER, LAURA FERRITER, O. A. POWELL and CORA POWELL, *Appellees*, v. THE MARLAND PIPE LINE COMPANY (now THE CONTINENTAL PIPE LINE COMPANY), *Appellant*.

Opinion filed April 11, 1931.

*A. M. Ebright,* of Wichita, *C. B. Stewart, Robert R. Pruet* and *William H. Zwick,* all of Ponca City, Okla., for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers* and *Carl T. Smith,* all of Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: These cases were tried separately in the court below, but have been consolidated here. The pipe-line company brought condemnation proceedings to secure a right of way for its pipe line across the lands owned by appellees. The appellees appealed to the district court from the award of condemnation allowed by appraisers. Judgment was for the landowners in an amount greater than the appraisers allowed. The pipe-line company appealed.

The facts are these: The pipe-line company had under way the construction of a pipe line for the purpose of transporting crude oil across certain lands in Sedgwick county. It was successful in obtaining a right of way from the landowners in most cases. However, in the case of one tract owned by Sam T. Stewart and wife and another owned by John Ferriter and wife and O. A. Powell and wife, the company concluded to obtain a right of way by condemnation. All pipe-line companies have this right by virtue of R. S. 17-618. Petitions were filed in the district court and appraisers were appointed and returned their appraisements. Following the filing of the appraisers' report and within the time prescribed by statute the pipe-line company paid the amount of the award to the treasurer of Sedgwick county. In each case the landowners appealed to the district court from the award. Trials were had in the district court and a judgment for the landowners for a much larger amount than the appraisement was entered in each case. After the verdict of

the jury had been returned and motions of the pipe-line company to set aside special findings and for judgment notwithstanding the general verdict was denied, personal judgment was entered against the company in each case.

The company then signified its intention to abandon the condemnation proceedings and executed quitclaim deeds to the landowners for the right of way that had been condemned. It also filed proceedings in court setting out the abandonment and the release and objecting to any personal judgment being entered. The court rendered personal judgment and in effect denied the pipe-line company the right to abandon. From that ruling the company appeals.

The question in both cases was, Does an oil pipe-line company, having instituted proceedings to condemn a right of way, have a right to abandon those proceedings after the rendition of a verdict where it has not entered upon nor taken possession of the land, and on an appeal to the district court in a condemnation proceeding is it error for the court to enter an ordinary personal judgment to be collected by execution?

In the Stewart case there are two minor questions that will be answered later.

The statute which gives oil pipe-line companies the right to condemn the right of way is R. S. 17-618. That section was originally section 88 of chapter 23 of the General Statutes of 1868, and, as passed, gave the right of eminent domain to macadam, plank road and telegraph corporations in the same manner as provided for railway corporations. It was amended from time to time so as to give other companies of the same general nature the right to condemn land, and in 1917, by chapter 122, the right was conferred on pipe-line companies transporting oil. The sections that provided the procedure for carrying out condemnation were sections 86 and 87 of chapter 23 of the General Statutes of 1868, now R. S. 66-906 and 66-907. These were amended by chapter 74 of the Laws of 1870. These sections furnished the procedure by which condemnation was carried out for railroad as well as other corporations that were entitled to the right until the legislature met in 1923. That session passed chapter 166 of the Laws of 1923, which only changed the procedure as to notice, and still by its own terms applied only to railway corporations, although, as we have seen, all companies

having the right of eminent domain were compelled by the amendments which gave them that right to resort to it.

Appellant cites a number of Kansas cases, which hold that a railway company has the right to abandon its condemnation proceedings at any stage. (*Railway Co. v. Wilson,* 66 Kan. 233, 69 Pac. 342, and cases cited.) Those cases, however, were all construing the terms of R. S. 66-901 and the following sections, which were, as we have seen, parts of chapter 23 of the General Statutes of 1868 and were being construed as to railway corporations. From 1917 to 1923 these cases would have been decisive of this case because an oil pipe-line company would have carried on its condemnation proceedings under that section.

The session of 1923, besides passing R. S. 66-906, which is chapter 166 of the Laws of 1923 and an amendment of chapter 23 of the General Statutes of 1868, also adopted the Revised Statutes of 1923, and the commission for the purpose of revising the statutes reported and included therein R. S. 26-101 and 26-102. These two sections apply to all corporations having the right of eminent domain except railroads and interurban railway corporations. The condemnation proceedings in these cases were carried on under and are governed by the provisions of these two sections. Wherein do they differ from R. S. 66-901 *et seq.?* R. S. 66-903 provides that upon the filing of the appraisers' report and if the company shall within ninety days thereafter pay the amount to the treasurer, that the treasurer shall thereupon certify this fact upon the report and shall pay the amounts to the persons entitled thereto. The next section, being R. S. 66-904, provides that if the railroad company, within ten days of such certifying, shall cause a copy of the report to be filed with the register of deeds of the county, then "it shall have the right to occupy the lands . . . for the purposes necessary to the construction and use of its road; . . . for the use of the railroad as soon as so much of such railroad shall have been constructed fit for use." In the case of *Railway Co. v. Wilson,* supra, the court laid considerable emphasis upon the fact that title to the right of way did not pass until the road was actually constructed. The provisions of R. S. 26-101 on this point are different. After providing for the appointment of appraisers and for the report, it provides:

"If the petitioner desires to acquire the land at the appraised price it shall within thirty days deposit with the clerk of the district court the total amount of such appraisement, shall pay the court's costs and the fees of the appraisers,

to be fixed by the court or the judge thereof, and the title to all such lots and parcels of ground thereupon shall immediately vest in the said petitioner, and the said petitioner shall be entitled to the immediate possession thereof and all remedies provided by law for the security of such title and possession. A copy of such proceeding shall be filed with the register of deeds and recorded in the same manner as other conveyances of title. If the petitioner shall not within thirty days comply with all the terms of such condemnation, or appeal therefrom, judgment for the costs of such proceeding, including appraisers' fees, shall be entered against the petitioner as in other cases. [Revised, 1923.]"

It will be noted that the above section provides that the title goes to the corporation at once when it pays the amount named in the appraisers' report to the treasurer. In order for it to get this title nothing more needs to be done. Now, if the landowner sees fit to take the amount named by the appraisers, he is entitled to it at once when it is paid in. No one would say that in cases where this had happened and the money had been paid to the landowner that at some subsequent time the corporation could conclude to abandon the proceedings and demand this money back.

There is reason for this change in the statute. The reason itself suggests that the change was brought about to meet the very situation we are discussing here. That reason is that since the passage of the statute of 1868 wonderful things have happened in this state. Land has increased in value. It is bought and sold much more frequently than in those days and consequently it is unthinkable that a cloud could be put on the title to a piece of real estate by the filing of condemnation proceedings and remain there some months, maybe a year, until the interests behind the particular project were successful in getting it constructed. No doubt the reason railway companies were not included in the new statute was that the commission which prepared that section knew that the days of railway building in Kansas, except additions and changes in present systems, were about over. On the other hand, they probably foresaw what has happened—that a great network of pipe lines has been laid in the state, while a number of lines traverse its entire length.

There is another provision in R. S. 26-101 *et seq.*, which is a marked departure from R. S. 66-901 *et seq.* That is in the sections providing for appeal from the award of appraisers. R. S. 66-906, after providing for the appraisement and report, provides:

"And an appeal shall be had from the determination of the board of county commissioners, as to the value of the land, crops, buildings and other improvements on said land . . . in the same manner as appeals are granted from the judgment of a justice of the peace to the district court."

What is the provision of R. S. 26-102 on that feature? It is as follows:

"If the petitioner or owner of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall within thirty days file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions."

It will be noted that R. S. 66-906 only provides that an appeal shall be taken. Nothing is said about how it shall be tried. R. S. 26-102 says:

"An action shall be docketed and tried the same as other actions."

We have some provisions about actions in our code. No attempt was made to abandon this proceeding until after the verdict of the jury. R. S. 60-3105 provides as follows:

"An action may be dismissed without prejudice to a future action: First, by the plaintiff before the final submission of the case to the jury or the court where the trial is by the court."

There is a distinction in the code between actions and special proceedings. (R. S. 60-104 and R. S. 60-105.) The case of *Lanning v. Gay*, 70 Kan. 353, 78 Pac. 810, deals with that distinction, but that does not concern us here by reason of the fact that R. S. 26-101 provides that on an appeal from the award of the appraisers an action shall be docketed and tried the same as other actions. We have seen that no attempt was made to abandon this action until after the jury had brought in its verdict. In the case of *Cunningham v. Terminal Co.*, 126 Tenn. 343, 149 S. W. 103, Ann. Cas. 1913, 1058, this question was discussed and decided. The statute provided for condemnation and for an appeal as follows:

"Either party may also appeal from the finding of the jury and on giving security for costs have a trial anew before a jury in the usual way." (p. 349.)

The jury spoken of in that section is the same as our appraisers. The statute provided that the railroad had a right to the property immediately upon the confirmation of the report of the jury (appraisers) or, in case of an appeal, immediately upon the filing of a bond in double the amount allowed by the appraisers. In that case the proceeding had progressed to a point where the company had appealed from the award of damages and the jury had brought in its verdict. At that stage the company filed a nonsuit and attempted to abandon the whole proceedings. The court said:

"Our statute fixes the period at which a nonsuit may be taken. In Shan-

non's Code, section 4689, it is provided that in jury cases the plaintiff may, at any time before the jury retires, take a nonsuit, or dismiss his action as to any one or more defendants. In section 4691 it is provided that when the trial is by the court, instead of a jury, the nonsuit or dismissal shall be made before the cause is finally submitted to the court, and not afterwards. Construing the two sections together, it is clear that a nonsuit cannot be taken after the jury has retired to consider its verdict in a jury case, or after the cause has been finally submitted to the court, in a case tried before the court without the intervention of a jury. (*Railroad Co. v. Sansom,* 113 Tenn. 683, 84 S. W. 615.) We, therefore, fix the date at which a nonsuit may be taken in a condemnation case in this state at the time when the case has been finally submitted to the jury on a trial in the circuit court before the court and the jury, and before the jury has retired to consider of its verdict." (p. 356.)

The reasoning in that case appeals to us. In *Union Ry. Company v. Standard Wheel Co.,* 149 Fed. 698, the same conclusion is reached as to the Tennessee statute, which, as has been seen, is very similar to ours.

For all the reasons given, we conclude that the lower court was right in denying to the pipe-line company the right to abandon the condemnation proceedings.

As to the right of the court to give personal judgment against the pipe-line company, what has already been said applies with equal force to that question. The result of an action must be a judgment. This was an action—hence must result in a judgment.

In the Stewart case it appears that during the January term the court granted to the pipe-line company a new trial. About two weeks later and in the April term the court set aside the order granting a new trial and found the terms of a remittitur upon which a motion for a new trial would be denied. The landowner agreed to the terms of the remittitur and accordingly the motion for a new trial was denied and judgment entered against the pipe-line company and in favor of the landowner.

The pipe-line company urges that the court, having granted a new trial during one term, had no authority to set that aside and deny the motion for a new trial at the subsequent term. This question was settled adversely to the claims of the pipe-line company in the case of *Bank v. Wright,* 98 Kan. 248, 157 Pac. 1178. No sufficient reason is advanced as to why the decision in that case should be overruled.

In the Stewart case, also, the court instructed the jury in part as follows:

"There is no provision in the statute as to just how and in what manner the pipe line shall be laid, as to whether above or under ground."

The pipe-line company urges that this was error and that it had a great influence on the jury. It has urged that the report of the appraisers states that the pipe was to be laid underground and that hence this instruction should not have been given. It is not said, though, that the company was bound by the report of the appraisers. The instruction complained of correctly states the law and it does not appear that any objection to it or request for its modification was made. We therefore see no error therein. For all the reasons stated, the decision of the lower court is affirmed.

HUTCHISON, J., not sitting.

SLOAN, J., not participating.