No. 32,157

In re W. C. DURKEE, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BOURBON, *Appellee.*

(51 P. 2d 984)

Opinion filed December 7, 1935.

*Daniel O. Lardner* and *Hubert Lardner*, both of Fort Scott, for the appellant.
*Frank O'Brien*, of Fort Scott, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was a condemnation case against the board of county commissioners of Bourbon county for damages to a 120-acre tract belonging to the plaintiff occasioned by the construction of a benefit-district road along and on the west side of the land.

The claim filed by the plaintiff with the county board was for $2,000, the same being for land taken, the building of fence, and damage to the land not taken by reason of the diversion of the stream of running water (Drywood creek) from his land. The county board allowed plaintiff $42 for the seven tenths of an acre of land taken and $45 for removing ninety rods of fence at fifty cents per rod, or a total of $87. The landowner appealed to the district court, and the case was tried there without a jury. The court allowed $35 for the land taken and $45 for the removal of the fence, making a total of $80, and no allowance in either case was made for damages to land not taken by the diversion of the creek. The trial court made findings of fact and conclusions of law.

Two preliminary questions are noted: First, that plaintiff in his appeal to the district court did not file any pleading or claim of any

kind for damages, and second, that he did not request modification or additional findings when they were filed and before taking his appeal to this court. Appeals in such cases are taken in the same manner that they are taken from judgments of justices of the peace in civil cases (R. S. 68-107), which is by filing a bond, and the cases shall be tried *de novo* upon the original papers (R. S. 61-1002 and 61-1003). As to requesting additional findings or modification of the findings, such is necessary only when something has been omitted or overlooked, and not when there is a specific finding against the appellant's theory and contention. There is no controversy in this case about the value of the land taken or the allowance for removal of the fence. The only question is the damage to the land not taken by reason of the diversion of the running stream from the plaintiff's land.

The findings show that this running stream, Drywood creek, was diverted from this land, in connection with the building of this road, 350 feet southwest of where it entered plaintiff's land, and was provided with a new channel in a northeasterly direction, connecting with the original channel after it left the land of the plaintiff, so that as a running stream it was completely diverted from plaintiff's land.

All the witnesses whose testimony we have, except two engineers, gave testimony as to the market value of the land not taken, before the stream was diverted and after it was diverted, and that was the sole issue. The three county commissioners and one former county commissioner said the land was worth as much or more after the building of the new road than it was before, some of them stating that the new road enhanced the value of the land, which was contrary to the court's conclusion concerning the same. The finding was that there was no damage to the land not taken by reason of the diversion of the stream. That was not such a finding as needed an additional finding or modification. The only other finding possible could have been the opposite and the amount of damages.

The court very properly stated in its third conclusion that the vacating of the old road on plaintiff's farm and any general benefits to the land on account of the new road being built were not matters to be taken into consideration in awarding or refusing to award damages. And this was especially the correct rule with reference to a benefit-district road. The court in another conclusion correctly outlined the rule as to damages being the difference in the real value

of the land just before and just after the construction of the road. No mention is made in the conclusions of law as to the diversion of a running stream being a possible element of damage to the land not taken.

The trial court in its second finding of fact describes the 120 acres belonging to the plaintiff, consisting of two adjoining 10-acre tracts in section 20 and a 100-acre tract lying immediately north of them, and that one of the 10-acre tracts was in the southwest corner of the section. The third and fourth findings are as follows:

"3. That Drywood creek, before the new road was built, came onto this 10-acre tract in the southwest corner of section 20, just near the southwest corner, and flows east about 600 feet and then makes a bend, forming a gooseneck, and goes off the Durkee land at, or just near the northwest corner of this small tract. . . .

"4. That when the new road was constructed, it took 7/10 of an acre off the extreme west end and the fence on said strip, and at a point about 350 feet southwest of the southwest corner of this 10-acre tract, the channel of Drywood creek was changed to the north for about 550 feet, where it again entered the old channel, and then flows on northwest for a distance; and in changing this channel, the current of Drywood creek was taken out of the gooseneck, that passed on to the Durkee land and by and near his house and barn."

The fifth finding tells of the road builder's placing a four-foot iron pipe under the road at the place where the creek formerly entered the plaintiff's land and a large wooden box under the road where it formerly came out from the farm, and concludes as follows:

". . . and by this tile and box under the new road, the old channel around the gooseneck and by and near the house and barn of this claimant, fills with water in times of high water, some three or four times during the year."

The ninth and twelfth findings are as follows:

"9. The water in the gooseneck now and as it has been during the past three and a half years, serves this claimant in every way it did just before and just after the new road was built in the summer of 1930, except these holes are not so near and convenient as was the water when it flowed all the way around the gooseneck and near the house and barn of plaintiff, but before the change in the channel there was not water at all times and seasons of the year, in the bow of the gooseneck nearest the house and barn, and in times of high water the old channel is filled all the way around."

"12. The building of this new road by plaintiff's land and changing the channel of Drywood creek so that most of the water does not flow around the gooseneck on plaintiff's land, has not resulted in any general damages to plaintiff's land, but 7/10 of an acre of his land taken was worth $35, and the fence taken was worth $45."

The two assignments of error are as follows:

"That the court erred in holding that appellant was not damaged by the diverting of Drywood creek, that appellant's land was not reduced in value by the diverting of said creek, and that appellant was not entitled to damages by the diverting of said stream.

"That the decision of the court is contrary to the evidence."

Instructions as follows to juries, along the line of damages in such cases, have been approved by this court:

". . . You may, I think, take into consideration the productiveness of the land before and afterwards, any extra work that may be entailed by reason of the making of the improvement, any inconvenience that the person would be put to in the manner in which he operated his place." (*Laptad v. Douglas County Comm'rs,* 130 Kan. 564, 567, 287 Pac. 255.)

"You are further instructed that, in determining the amount of plaintiff's recovery, the proper basis of damage is the value of the tract actually taken, and the difference in value of the remainder of the tract immediately before and after the taking, and, in this connection, you are instructed that, in determining the value of the tract taken and the difference in value of the remainder of the tract before and after the taking, you are to consider all the capabilities of the property and its most advantageous uses as it is actually situated." (*Emery v. Riverside Drainage District,* 132 Kan. 98, 99, 294 Pac. 888.)

The court found that the current of Drywood creek was diverted from plaintiff's land, that the channel fills with water in times of high water three or four times a year, and that the holes are not so near and convenient as was the water when it flowed around the gooseneck near the house and barn. This diversion was the taking of private property, and while it may have to be subjected to such use for the best interests of the country at large, it should not be taken without just compensation. Even the inconvenience that the court mentions is an element of damage to the land not taken. A running stream through a farm is an asset. This is not even re- garded as a debatable question. It has always had a real value, and the only question is, what is that value to the plaintiff's farm.

"The waters of a private pond or a private watercourse are private property and cannot be taken for public use without compensation to all the riparian owners whose rights are injuriously affected." (10 R. C. L. 84.)

"It is the well-settled general rule that a riparian proprietor has a right to have the water of a stream flow down to his land as it is wont to run, in its natural mode and course, undiminished in quantity and unimpaired in quality, unless this right has been limited or destroyed by an appropriation and adverse use thereof by some other person, continued sufficiently long to create a right in the adverse holder. . . . Use does not create, and disuse

cannot destroy or suspend it. It is a private property right in the proprietor within the protection of the constitutional provision that private property shall be forever held inviolate, subject to the public welfare, and shall not be taken for public use without compensation being first made." (27 R. C. L. 1091, 1092.)

"Water rights are within the protection of the constitutional inhibition against taking or injuring private property without compensation, and if the waters of a lake or stream are taken directly or indirectly so as to infringe upon the rights of a riparian proprietor, compensation must be made." (20 C. J. 660.) (See *Shamleffer v. Peerless Mill Company,* 18 Kan. 24.)

We think the finding was contrary to the law of the case and the evidence, and that the amount of the damage to the land not taken on account of the diversion of the running stream should be found.

The judgment is reversed.