No. 33,580

J. N. GLOVER, *Appellee,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(77 P. 2d 189)

Opinion filed March 5, 1938.

*Lester M. Goodell,* assistant attorney general, *Robert Osborn,* of Stockton, *Woodrow B. Morris,* of Oxford, *C. C. Casey,* of Topeka, *Joseph W. Menzie,* of Manhattan, and *Robert G. Lindsay,* of Kansas City, for the appellant.

*A. J. Herrod* and *R. W. Radford,* both of Kansas City, for the appellee.

The court also considered briefs of counsel and *amici curiae* submitted upon the motion for rehearing, and the resubmission of *Russell v. State Highway Comm.,* 146 Kan. 634, 73 P. 2d 29.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from a judgment in a state highway condemnation case. In March, 1936, the state highway commission, desiring to widen and improve a portion of the state highway system, known locally as the "Reidy Road," in Wyandotte county, filed its petition, in due form, for the appointment of appraisers for the taking of a strip of land 50 feet wide and 363 feet long belonging to J. N. Glover and adjoining the then right of way of the state highway. Commissioners were appointed, who gave notice as provided by law, and who made an appraisement for the land taken, $105, for fence, $10.20, for trees, $30, and for yard damage, $50, making a total award of damages of $195.20, and filed their report with the clerk of the district court, May 12, 1936. On May 28, 1936, being dissatisfied with the appraisement, J. N. Glover filed with the clerk of the district court a notice of appeal and a bond in the penal sum of $50, signed by himself and two sureties, residents of the county, which recited the proceedings taken and the appraisement made, that he felt himself aggrieved thereby, and appealed therefrom to the district court of Wyandotte county, which bond concluded:

"Now, therefore, if the said J. N. Glover will prosecute his appeal to effect and without unnecessary delay, and if a judgment rendered against him on the appeal will satisfy such judgment and costs, then this obligation to be null and void, otherwise to be and remain in full force and effect."

This bond was approved by the clerk of the district court, and the proceeding was docketed as a civil action. Thereafter, and before the trial of the action in the district court, the state highway commission filed a motion to dismiss the appeal, for the reasons: (1) that it was not taken as provided by law, in that a bond conditioned by law was not filed; and (2) that the owner of the land did not, within thirty days, file a bond for the cost of such appeal, as required by law, in that he filed a bond for a specific amount, to wit, $50. This motion was considered by the court and overruled. Thereafter the action was tried to a jury and resulted in a judgment for Glover against the state highway commission for $1,500. From this judgment the state highway commission has appealed, and contends (1) that the appeal bond filed by Glover did not give the district court jurisdiction of the action, (2) that the court erred in admitting evidence as to damages, and (3) in refusing to receive certain evidence offered. We shall speak of the landowner as plaintiff and of the state highway commission as defendant.

Before considering questions argued by defendant, as appellant here, we must consider a question raised by plaintiff, as appellee here; namely, that there is no appeal from the district court to this court in a condemnation proceeding conducted under G. S. 1935, 26-101 and 26-102. In support of appellee's motion to dismiss this appeal on that ground it was argued that condemnation under these sections is a special proceeding or inquest (*State Highway Commission v. Griffin,* 132 Kan. 153, 155, 294 Pac. 872; *Todd v. Atchison, T. & S. F. Rly. Co.,* 134 Kan. 459, 461, 7 P. 2d 79) ; that the legislature was under no constitutional duty to provide for any appeal from the award of the commissioners (20 C. J. 1091; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* 28 Kan. 453, 461), and that it has, in fact, provided only for an appeal to the district court. *Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233; *National Bank of Topeka v. State,* 146 Kan. 97, 68 P. 2d 1076, and G. S. 1935, 60-3823, are cited and principally relied upon, although other cases and other sections of the statute having a less direct bearing upon the question also are cited. The Norman case construed the workmen's compensation law as rewritten in 1927 (Laws 1927, ch. 232). This set up an entirely new machinery for handling a compensation case from that previously existing. There was a clear intention to create a procedure applying to that class of cases only, and to make it complete within itself, and one of the things to be accomplished was the early determination of claims in workmen's compensation cases. With some doubt upon the point (the court was divided), it was thought that the omission to provide for an appeal to the supreme court was intentional. That this conclusion was perhaps not well founded is indicated by the fact that at the first session of the legislature following that decision provision was made to appeal those cases to this court (Laws 1929, ch. 206) ; hence, there should be no disposition to extend the doctrine of the Norman case on this point.

The National Bank of Topeka case involved the determination of the amount of an inheritance tax, first by the inheritance tax commission, and then, upon a *review* of its order, by the district court. There is no provision for *appeal* from the inheritance tax commission to the district court, nor does the statute provide that it becomes a "civil action," or any kind of an action in the district court. Under those statutes the district court simply sits as a reviewing body of the order of the inheritance tax commission; hence, what was said in that opinion is not in point here.

G. S. 1935, 60-3823, so far as here pertinent, reads:

"Until the legislature shall otherwise provide, this code [of civil procedure] shall not affect proceedings to assess damages for private property taken for public uses, . . . but such proceedings may be prosecuted under the code whenever it is applicable."

So far as it applies here, this section simply means that the code of civil procedure has no application to any special procedure provided by the legislature for the taking of private property for public use unless and until an appeal is taken to the district court, unless the legislature specifically makes the civil code applicable prior to that time, which it has not done. G. S. 1935, 26-102, reads as follows:

"If the petitioner or the owner of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions."

This follows, of course, what has been done under the special proceedings for the taking of private property for public use, as outlined in G. S. 1935, 26-101, and the filing of the report of the commissioners, previously appointed, with the clerk of the district court, showing the award of damages made by them to the landowner. That prior proceeding is what the code of civil procedure does not apply to, as was stated in G. S. 1935, 60-3823. But when the notice of appeal and bond are given and approved, as authorized by G. S. 1935, 26-102, "an action shall be docketed and tried the same as other actions." With respect to the trial of such an action the civil code does apply. (*C. I. & K. Rld. Co. v. Townsdin*, 45 Kan. 771, 774, 26 Pac. 427; *Stewart v. Marland Pipe Line Co.*, 132 Kan. 725, 297 Pac. 708; *State Highway Comm. v. Phillips*, 146 Kan. 78, 69 P. 2d 12; *Bruna v. State Highway Comm.*, 146 Kan. 375, 69 P. 2d 743.) The result of the trial of such an action becomes a judgment (*Stewart v. Marland Pipe Line Co.*, supra), and our code provides that an appeal may be taken from the district court to this court upon the final judgment of an action tried in the district court. (G. S. 1935, 60-3302.) It follows, therefore, that the contention of plaintiff, as appellee here, that no appeal lies from the district court to this court in this kind of an action, is not well taken.

We shall now take up the questions presented by defendant, as appellant here. First, it is contended that the bond given by the landowner, Glover, in his effort to appeal from the award of the

appraisers, is not in conformity to the statute (G. S. 1935, 26-102), and was insufficient to give the court jurisdiction; hence, that its motion to dismiss that appeal, filed in the district court, should have been sustained. The appellant here was the appellant in *Russell v. State Highway Comm.* (and another case disposed of in the same opinion), 146 Kan. 634, 73 P. 2d 29, where the bonds, so far as here important, were worded the same as they are in this case. Appellant made the same contention in those cases it is making here. In the decision of that case a majority of this court agreed with appellant and reversed the judgments obtained by the property owners in the district court, with directions to vacate the judgments and to dismiss the appeals attempted to be taken to the district court. Following the handing down of that decision motions for rehearing were filed, supported by briefs of counsel for the respective parties, also by briefs of counsel appearing as *amici curiae* by leave of court. Pending the consideration of these motions for rehearing, and briefs thereon, this action was submitted. Thinking that because of other questions argued (one of which caused the division of the court), perhaps the court had not given as careful attention as it might to the specific question of whether the bonds given were sufficient to confer jurisdiction of the actions upon the district court, we ordered a rehearing in the Russell case and its companion and reassigned this case for reargument at the same time, and requested the argument to be directed at the sufficiency of the bonds to give the district court jurisdiction of the actions on appeal from the awards. The cases have been reargued and additional briefs filed, all of which we have considered. We are now of the opinion that the conclusion reached by the majority of the court in the decision of the Russell case (146 Kan. 634, 73 P. 2d 29), was erroneous, in that we regarded the statute (G. S. 1935, 26-102) to be tantamount, so far as the bond to be given is concerned, to G. S. 1935, 61-1002, and in not considering more carefully the purpose the legislature had in mind with respect to the conditions of bonds in condemnation proceedings.

G. S. 1935, 61-1002, is one of the sections of chapter 229, Laws 1931 (G. S. 1935, 61-1001 to 61-1003a, incl.). This statute was enacted to deal with appeals in civil actions from justice of the peace courts and other courts of the state having justice of the peace jurisdiction. Its principal purpose was to avoid some of the hardships to litigants in such cases, which frequently occurred under previously

existing statutes. One of the purposes was to enable a defendant, against whom a money judgment had been rendered, to appeal to the district court without giving bond to pay double the amount of the judgment against him; hence, it provided that the appeal might be taken by filing a notice of appeal and by giving a bond to pay the cost of the appeal. If in addition to that he desired to stay execution on a money judgment against him he could give an additional bond for that purpose. The statute was written so as to avoid confusion as to just when the appeal becomes effective. Under it, when the notice of appeal is filed and the bond given to secure the cost of the appeal, the statute declares, "thereupon the appeal shall be deemed perfected." Only two things are required to be done; they are clearly stated, and they are not burdensome to a litigant. When cases came up involving the statute it was said, in effect, that the statute should be followed. (*Auto Trunk Co. v. Hahn*, 138 Kan. 36, 23 P. 2d 585; Id., 139 Kan. 17, 29 P. 2d 1115.) The statute was designed to apply to appeals from the courts mentioned in it, or other appeals which the statute required to follow the justice of the peace practice. (*Durkee v. Bourbon County Comm'rs*, 142 Kan. 690, 691, 51 P. 2d 984; *Jensen v. City of Chanute*, 146 Kan. 162, 68 P. 2d 1080.) It was never intended to apply to all classes of appeals to the district court. (See *In re Estate of Johnson*, 147 Kan. 12, 14, 75 P. 2d 813.)

G. S. 1935, 26-102, came into our statutes at the time of the general revision of 1923, eight years before chapter 229, Laws 1931, was enacted, and hence could not have been influenced by it, or by the decisions construing it. This is a section of a statute which did not deal alone with appeals. It was a part of our statutes dealing generally with condemnation proceedings, and specifically with condemnation proceedings by corporations (other than railroads), privately owned but having the right of eminent domain.

The commission to revise our statutes in 1923 found many sections of existing statutes relating to procedure for condemning private property for public purposes. In some of these the procedure was before the district court, or judge thereof; in some before the probate court, and in some before county commissioners. These are mentioned at page 11 of the report of the commission of December, 1922, and it is said:

"We have, therefore, prepared a general statute on eminent domain, providing for condemnation in every instance before the district court, and have eliminated all of these conflicting provisions."

The general statute proposed was set out at pages 97 to 99 of the report, and with a slight change, not here important, appeared as articles 1 and 2 of chapter 26 of the Revised Statutes of 1923 (G. S. 1935, 26-101 to 26-210). See, also, *Miltimore v. City of Augusta,* 140 Kan. 520, 522, 38 P. 2d 675. Article 1 of this chapter (G. S. 1935, 26-101, 26-102) deals with the procedure when the condemning party is a corporation. Article 2 (G. S. 1935, 26-201 to 26-210) deals with the procedure when the condemning party is a city, and with this we are not here concerned.

The commission which drafted the statute (G. S. 1935, 26-101, 26-102), and the legislature which adopted it, had before them the previous statutes of the state and the previous decisions of this court respecting eminent domain and procedure therein. Certain principles respecting those matters had become settled in the law of this state, of which the following may be mentioned: (1) The power of eminent domain; that is, the right to take private property for a public use is inherent in a state; it is not one granted by our constitution. (*C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* 28 Kan. 453; *Jockheck v. Comm'rs Shawnee Co.,* 53 Kan. 780, 789, 37 Pac. 621; 20 C. J. 513; 10 R. C. L. 6; Lewis on Eminent Domain, § 1), but its exercise may be limited by the constitution (*Challiss v. A. T. & Santa Fe Rld. Co.,* 16 Kan. 117; 20 C. J. 516; 10 R. C. L. 11, 12). (2) Except as so limited, it may be exercised for any public purpose designated by the legislature, and in the manner it prescribes. (*Irrigation Co. v. Klein,* 63 Kan. 484, 485, 65 Pac. 684; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* supra; 20 C. J. 624; 10 R. C. L. 195.) (3) The taking of private property for public uses is not necessarily a judicial act; it may be done by or before a non-judicial officer, board or tribunal. (See authorities above cited.) (4) That may be the district court, or any judge thereof, the probate court, or its judge, boards of county commissioners, or any other official board or tribunal authorized by the legislature to act in that capacity. (See Gen. Stat. 1915, §§ 1075, 1745, 1971, 1972, 2187 to 2207, 5733 to 5740, 9408 to 9413, and cases there annotated; 20 C. J. 1023 to 1028.) (5) The nature of the proceedings is not changed by reason of other duties, or of the class or classification of the official board or tribunal before whom, or by whom, the proceeding is conducted. The proceeding in all cases consists of a declaration or prima facie showing by the condemning party that it has the right of eminent domain and to take the private property in question for

a specific public use, that it has found it necessary to do so, and a request for the appointment of commissioners to determine the amount the condemning party should pay for the property taken, and the amount of damages, if any, to the remaining property of the owner resulting from the taking, the determination of those matters by the commissioners, and their report to the official board or tribunal designated by statute to receive such report. (6) The amount found by the commissioners proper to be paid by the condemning party was called an award. (See above authorities.) It was determined by the commissioners, not by the official board or tribunal which appointed them, or to whom they made their report. It was not a judgment; no execution could be issued on it. (7) While it was usual for statutes to make a provision for either party not satisfied with the award to appeal to the district court, such a provision was not essential to the validity of the proceedings or the award. (*C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, supra.) (8) There was no action in court until one of the parties took an appeal from the award. Prior to that time everything done was in the nature of an inquest (*State Highway Commission v. Griffin*, 132 Kan. 153, 155, 294 Pac. 872), and under the procedure specifically provided for the particular kind of condemnation.

There is nothing in the statute (G. S. 1935, 26-101, 26-102), or in the report of the commission to revise the statutes, which indicates an intention to change the essential nature of these proceedings prior to the time one of the parties took an appeal to the district court.

In some of our cases it has been held that even after the appeal had been taken it continued as a proceeding to determine the amount of an award. (*W. & W. Rld. Co. v. Kuhn*, 38 Kan. 104, 109, 16 Pac. 75; *K. C. W. & N. W. Rld. Co. v. Kennedy*, 49 Kan. 19, 23, 30 Pac. 111, 126.) The parties were left to their common-law remedies. (*Railway Co. v. Murphy*, 75 Kan. 707, 714, 90 Pac. 290.) Whether under the new statute (G. S. 1935, 26-102) the result of the trial of the action on appeal would be an award or a judgment was not determined in *State Highway Commission v. Griffin*, 132 Kan. 153, 155, 294 Pac. 872, since it was not necessary to a decision in that case; but in *Stewart v. Marland Pipe Line Co.*, 132 Kan. 725, 297 Pac. 708, it was held that after an appeal it is an action governed by the code of civil procedure, in which a personal judgment may be rendered.

The new statute (G. S. 1935, 26-101, 26-102) attempted to make

the procedure uniform in all cases to which it applied, and provided the appeal should be docketed and tried as an action, and an action is defined by our code (G. S. 1935, 60-104).

Having provided (in G. S. 1935, 26-101) a special procedure for the exercise of the right of eminent domain by corporations, a section was added (26-102) giving the condemning party, or the owner of the real property, if dissatisfied with the award made by the commissioners, a right of appeal to the district court, where what was previously a special proceeding in the nature of an inquest became an action to be docketed and tried the same as other actions in the district court. To accomplish that, the dissatisfied party, within thirty days after the report of the commissioners is filed with the clerk of the district court, shall file a notice of appeal "and give bond for the costs thereof, to be approved by said clerk." The notice of appeal was given in this case, and no question is raised as to its sufficiency. Also, a bond was given which was approved by the clerk of the district court.

Appellant contends the bond does not conform to the statute and is insufficient to give the district court jurisdiction of the action; that in fact it is void and of no effect, for the reasons (1) it is not a bond to pay *all* the costs of the appeal, but only so much thereof as are adjudged against the appealing party; and (2) it is limited to the penal sum of $50, whereas the cost of the appeal, even the part adjudged against the appealing party, might exceed that sum.

It will be observed the bond to be given was for the cost of the action in the district court, and that the clerk of that court was designated as the official whose duty it was to approve the bond. The language of this statute does not follow the language of any of the previous statutes respecting the kind of a bond one dissatisfied with an award in a condemnation proceeding should give in order to have a hearing in the district court. Some of the previous statutes required the same kind of a bond one should give in appealing a civil action from a justice of the peace court to the district court. Some specifically set out the kind of a bond which should be given, and some of these required a different kind of a bond, depending on whether the property owner or the condemning party was appealing; and at least one of them required no bond where state property was being taken and the appeal was by the governor acting for the state.

Since the special proceeding was being converted into an action in the district court, there is reason to believe the commissioners

who framed the act, and the legislature which passed it, had in mind the kind of a bond a litigant would give in filing an ordinary civil action in the district court. Our code (G. S. 1935, 60-2401) requires such a bond to be approved by the clerk of the district court, and that it be "conditioned that the plaintiff will pay all costs that may accrue in said action in case he shall be adjudged to pay them, or, in case the same cannot be collected from the defendant if judgment be obtained against him, that the plaintiff will pay the costs made by such plaintiff." The bond given in this case, and approved by the clerk of the district court, followed, in the main, this statute. This kind of a bond is not required to be in any definite sum (*Simpson v. Rice,* 43 Kan. 22, 22 Pac. 1019), but it has been held that where such a bond was in the penal sum of $50 it is not void for that reason (*Obertino v. Mining Co.,* 87 Kan. 297, 299, 124 Pac. 172) ; and, generally speaking, such bonds are required for the protection of court officials and witnesses. Defects in the wording of such a bond do not affect the jurisdiction of the court to hear the action. (*Farmer v. Warner,* 64 Kan. 878, 68 Pac. 1127.) The opposing party may ask the court to require new or additional bond, and the case should not be dismissed because of imperfections in such a bond unless and until the party who gave it has had an opportunity to give another or a sufficient bond.

Defendant, as appellant here, in effect contends that because of the words "bond for the costs thereof" (in G. S. 1935, 26-102), the legislature was fixing the conditions of the bond and requiring the party giving it to give bond for the costs of the action irrespective of who was adjudged to pay the costs. This is the foundation for the argument that the language used should be given the same construction as this court has given to the language in G. S. 1935, 61-1002. This is a matter to which we have given much thought, and have reached the conclusion that the contention cannot be sustained. As previously pointed out, that statute and the decisions construing it were not in existence at the time the statute here being considered was enacted, and it had a purpose decidedly different from the statute now being considered. In the statute now being considered the commissioners who framed it, and the legislature which passed it, by providing for the notice of appeal and bond, were simply endeavoring to transfer a special proceeding into an action in court. They were familiar with the terms of the bond required for the beginning of a civil action in the district court. The statute in its present wording on that point was originally passed in

1909, but somewhat similar statutes have been in force since 1858. Many decisions of our court have interpreted it. We think it much more reasonable to say that was the intent of the language used than to say that the legislature, by these few words, was intending to state the conditions of the bond to be given.

Another reason prompts us to reach this conclusion. In the taking of private property for a public purpose the owner of the property is entitled to be paid the reasonable value of the property taken and the damages to the remainder of his property by reason of the taking, and this sum should not be diminished by costs. They should be paid by the condemning party. The statute (G. S. 1935, 26-101) requires the condemning party to pay the costs of the special procedure for the taking of the property. It is the general rule in this state and elsewhere that where an appeal is provided from the special procedure to a court, and the same is taken by the owner of the property aggrieved with the award, and if the amount due him is increased upon a hearing in court, he should not be required to pay any costs. (See *Bruna v. State Highway Comm.*, 146 Kan. 375, 69 P. 2d 743, and cases cited therein.) We think the commission which framed this statute, and the legislature which passed it, had no thought of changing that fundamental rule. It is argued on behalf of plaintiff, as appellee here, that a statute which would require the property owner in such a proceeding to give a bond to pay the costs in an appeal from an award in any event, would be in violation of our constitution. We find it unnecessary to go into that question. We prefer to rest our decision on this point upon the ground that it would have been such an innovation in the law of this state respecting such appeals, and so questionable from a constitutional viewpoint, that we are confident the legislature would not have attempted to do so in the few words chosen, but would have made its intent clear by sufficient appropriate language.

The fact that the clerk of the district court approved this bond should be given some force. He is the official designated by the statute as the person to pass upon and approve the bond. Unless it can be said to be wholly void, his approval of it cannot be ignored.

Having given the question more careful consideration, being aided by the briefs of counsel, we feel confident in holding that the bond given in this case was not so defective as to deprive the court of jurisdiction of the action. The holding in *Russell v. State Highway Comm.*, 146 Kan. 634, 73 P. 2d 29, to the contrary is overruled.

In 1929, when the legislature created the state highway commission and placed upon it the duty of acting for the state in improving state highways (Laws 1929, ch. 225), it found it necessary for the state to acquire private property for the use of the state in constructing and improving state highways. This it did by section 14 of the act, now G. S. 1935, 68-413, later amended by chapter 286, Laws 1937. After providing the state may acquire property for such use by the exercise of eminent domain, in order that there should be no confusion about the procedure to be followed, it was said the right should be exercised "in accordance with the provisions of article 1, chapter 26, of the Revised Statutes of 1923" (G. S. 1935, 26-101, 26-102). These sections, as previously noted, were originally intended for the exercise of the right of eminent domain by privately owned corporations (other than railroads). In some respects, perhaps not important in this case, they are not the most suitable for the condemnation of property for use of the state. But we need not stop to consider the prudence of the requirement that the state must proceed under these sections; that was a legislative matter. The reference in the statute to the procedural sections has the merit of definiteness and makes it unnecessary to debate about what procedure is applicable.

We now take up the questions of evidence argued. A description of the premises will help us to understand these. Plaintiff owned a tract of about 8 acres in the southeast corner of a certain quarter section of land in Wyandotte county five miles west of the city of Kansas City. Its width east and west is 363 feet and its length north and south is 1,248 feet on the east side and 850 feet on the west side. The north line runs diagonally northeast and southwest. On the east line of this tract is an oil-surfaced township road. The state highway is on the south line of the tract, and before this condemnation proceeding it was 60 feet wide and had been improved with a cement slab 20 feet wide. Plaintiff purchased a part of this land in 1933 and the balance in 1935, and thereafter built a residence on the property at a cost of about $4,000, which was not fully completed when this condemnation proceeding was commenced. This was situated about 60 feet west of the highway on the east and 195 feet north of the state highway on the south. The entrance was from the east.

In order to provide a highway adequate for the traffic west of Kansas City the state highway commission early in 1936 found it

necessary, or prudent, to rebuild the state highway along the south line of plaintiff's land, a distance of about 20 miles west of Kansas City, by widening the highway and placing on the surface two 20-foot-wide cement slabs, two feet apart, and regrading the uneven surface by cutting down the high places and filling the low ones and by rebuilding culverts. In order to do this properly it was necessary to have an additional width of the state highway right of way. This condemnation proceeding was of a strip of plaintiff's land 50 feet wide and 363 feet long of the south side of his tract and adjoining the previously existing right of way of the state highway.

Soon after the commissioners appointed by the court made their appraisement and award, in May, 1936, the work of improving the highway commenced, and continued for several months, and perhaps was completed when this action was tried in district court. The work to be done on the old and newly acquired right of way of that portion of the state highway adjoining plaintiff's land on the south was the breaking up and removing of the old cement slab, regrading the highway by raising and widening it, the putting in of a new and larger culvert near the southwest quarter of plaintiff's land, and resurfacing the new grade.

One of the elements of damage sought by plaintiff resulted from the manner in which the old pavement was broken up and removed by the workmen. Over defendant's objection, plaintiff was permitted to testify that in doing this part of the work a large hammer, weighing about a ton, raised by power machinery and permitted to fall, was used in breaking up the old pavement; that this seriously annoyed the members of his family then living in the house he had built and jarred the house and things in it—so much so that it cracked large stones in the fireplace he had built in his house at a cost of about $500, which could not be repaired without tearing the fireplace down and rebuilding it. It is clear this is not a proper element of damage in this action, and that it was error to admit this testimony. Primarily, the plaintiff was entitled to recover for the property taken—the strip of land 50 feet by 363 feet—and damages, if any, to the remainder of plaintiff's land by reason of the fact that this part was taken. Defendant was not liable to plaintiff in this action for any damages caused plaintiff some time after the property was taken by misconduct or negligence of workmen employed by it, or its contractor; neither has the state ever given its consent to be sued for damages of this character.

Another line of evidence of damage, admitted over defendant's objection, that it was too remote and speculative, was to this effect: That when the plaintiff purchased this tract of land he had in mind that some day it would be more valuable to divide into half-acre and acre tracts and sell for suburban improvements. The evidence on this point disclosed that there had been some developments of this character along each of the paved highways out from Kansas City; that such developments had been made possible by reason of the paved highways, but the plaintiff's land was five miles from the city; there had been none of such developments that far out, and many of those attempted had been unsuccessful from a financial viewpoint; that the closest development of this character to plaintiff's land is two and one half miles northeast of it on U. S. 40, and that at the best, in the natural course of things, it would be a long time before plaintiff's land would have any appreciable value by reason of the thought of such future development. The objection to this line of evidence should have been sustained. Primarily, the value of the property taken and damages, if any, to plaintiff's property not taken, considered as of the time of the taking, were the things to be determined; not a speculative view of what the property might be worth under the most favorable conditions at some remote time in the future. (20 C. J. 775, and authorities there cited.) Later cases to the same effect are: *Super-Power Co. v. Sommers*, 352 Ill. 610, 186 N. E. 476; *In re Dillman*, 255 Mich. 152, 237 N. W. 552; *Olson v. United States*, 67 F. 2d 24.

A point much relied upon by plaintiff for the recovery of damages was the change of grade made by defendant in that portion of the improved highway adjoining plaintiff's land on the south. The evidence disclosed that the grade of the highway had been raised over that of the old highway about one foot at the southeast corner of plaintiff's land, about six feet west of there 100 feet, about ten feet 200 feet west, and about twelve feet near the southwest corner. This fact was stressed as an element of damages to plaintiff's land not taken by the condemnation proceeding by the testimony of plaintiff and many of his witnesses. Defendant's objections that this was not a proper basis or element of damages were overruled. They should have been sustained. Defendant already had a highway right of way 60 feet wide, which it had improved. It could have changed the grade of its road on that right of way by raising it, or lowering it, without being liable in damages to the owners of

property adjoining the highway. The rule is well settled that in the absence of a constitutional or statutory provision authorizing it, an abutting property owner is not entitled to recover damages from a state, county, township, or city because of the change of the grade of an existing highway or street. (*Callender v. Marsh*, 18 Mass. 417; *Smith v. Boston & Albany Railroad Co.*, 181 N. Y. 132, 73 N. E. 679; *Offutt v. Montgomery County*, 94 Md. 115, 50 Atl. 419; *McCullough v. Campbellsport*, 123 Wis. 334, 101 N. W. 709; *Talcott Bros. v. City of Des Moines*, 134 Ia. 113, 109 N. W. 311; *Psota v. Sherman County*, 124 Neb. 154, 245 N. W. 405; *In re Forsstrom*, 44 Ariz. 472, 38 P. 2d 878; *Calhoun v. Highway Com.*, 208 N. C. 424, 181 S. E. 271; *Hoffer v. Reading Co., Appellant*, 287 Pa. 120, 134 Atl. 415; *Vannoy v. Pennington*, 9 N. J. Misc. Rep. 98, 152 Atl. 784.) Such was the rule at common law. (*Stegall v. City of Chattanooga*, 16 Tenn. App. 124, 66 S. W. 2d 266.)

In this state we have no statute making the state, counties or townships liable for damages for changing the grade of an established highway. Where a public easement exists, no damages should be allowed for its exercise. (20 C. J. 744; *New Bern v. Wadsworth*, 151 N. C. 309, 66 S. E. 144.) The plaintiff was not entitled to any damages to his land not taken by reason of the change of the grade of the highway. That was the effect of our holding in *De Vore v. State Highway Comm.*, 143 Kan. 470, 54 P. 2d 971.

Defendant wanted a wider right of way because it was widening the portion of the highway designed for use for travel, for the slope of the grade, and for drainage; but the widening of the highway is not relied upon as an element of damage to the land not taken. This affects only the necessity of defendant to have additional width of highway, a matter which is included in the value of the land taken.

With respect to the value of the land taken—the strip, 50 by 363 feet, being about 42/100 of an acre—there was evidence as to the value of the land alone, and a fence thereon, concerning which there was not much conflict. There was also testimony as to the value of the trees on the land. It appears to have been discovered that they were exceptionally valuable trees. This testimony pertained principally to nine trees, seven black walnuts, varying in size from 10 to 24 inches in diameter, one white hickory, 22 inches in diameter, and one hackberry tree, 48 inches in diameter.

At the time of the trial of the action in district court all of the trees on the tract had been cut down except the hackberry tree and

four walnut trees. In mitigation of damages, defendant offered to show that it was its policy not to cut trees on land taken for highway purposes unless it was necessary in completing the work to be done; that it frequently planted trees or shrubs on its right of ways, and that it had given orders that the five trees should be let stand. Objections to receiving this testimony were sustained on the ground that defendant, having taken the land on which the trees are growing, had a right to cut them down at any time in the future, notwithstanding its present declared intention. Defendant did not offer this evidence by affidavit or otherwise on the hearing of its motion for a new trial; hence, it is not entitled to be heard here on its objection to the court's ruling. (See G. S. 1935, 60-3004, and cases cited in the annotations.) More than that, we see nothing in the brief which convinces us the court was wrong in its ruling.

To show the value of these nine trees plaintiff called two witnesses as experts. One was a tree surgeon, who placed a value upon the walnut trees and hickory tree at various figures from $30 to $200 each, and a value of $1,000 on the hackberry tree. He made it clear from his testimony that he was placing this value from a "tree surgeon's standpoint." Perhaps what he meant by that term is disclosed by his testimony with respect to work on trees in yards, parks and estates in and about Kansas City, where there were nice trees which the owners desired to preserve. Another was a nurseryman, whose business was setting out trees in yards, parks, and on estates in and about Kansas City. He placed substantially the same aggregate value on the trees (higher on some and lower on others). From his testimony it is clear he had in mind the value of such trees if moved to the yard, park, or estate of an owner who wanted that type of a tree. All of these trees were too large to move or transplant, unless, perhaps, the smallest walnut tree. None of the walnut trees was large enough, or had such a body shape as made it valuable to cut and sell for commercial purposes, except one, and no value was placed on it for that purpose. Objections to this evidence on the ground that it was not a proper measure of the value of the trees where they stood on the land to be taken were overruled, although the court told the jury they should consider the value where they stood. There is a conflict in the evidence as to the value of the trees for ornamental purposes because of the shape in which they had grown. It is conceded, however, by defendant that the hackberry tree is an unusually beautiful tree, and several

of the walnut trees were well shaped. Perhaps it can be said from the record that the five trees left standing were so regarded by defendant. We feel clear in saying that the evidence of the two expert witnesses above mentioned should not have been received, for the reason the testimony did not pertain to the value of the trees where they were, and for the further reason that it was placing a separate value upon the trees. Other witnesses called by plaintiff valued the trees separate and apart from the value of the land. The question being considered was the market value of the tract that was taken, 42/100 of an acre. It was proper to show what was on the land in the way of trees, but since they were growing there they were part of the land, and should not have been valued separately from the land.

In *Lee v. Missouri Pac. Rld. Co.*, 134 Kan. 225, 231, 5 P. 2d 1102, the landowner was claiming as an element of damage for land taken the value of a matured corn crop on the land. The claim was denied, but in discussing the question it was said in the opinion:

"If the corn crop was still drawing sustenance from the soil it should have been regarded merely as part of the land, like the grass, the trees and the buildings, and the value of the land taken would include the corn crop."

In *Saathoff v. State Highway Comm.*, 146 Kan. 465, 466, 72 P. 2d 74, in the opinion it was said:

"The other claim of error is this: Appellant had some currant bushes and a few fruit trees on the condemned land. They were not permitted to put a value on them separate from the value of the land. While it was proper to permit testimony as to how the land was improved, the improvements were a part of the real estate and were not to be valued separately."

In Lewis on Eminent Domain, 3d ed., § 724, it is said:

"The compensation should be estimated for the land *as land,* and not for the materials which compose it. But it is proper to show the value of crops on the land, though it is not competent to go into the question of the profits which might have been made therefrom but for the taking. So it is proper to consider the value of trees, or of peat on the land, or of a spring of water, or a well. But these items should not be valued separately but considered as affecting the value of the land."

The same rule is stated in 20 C. J. 798; 10 R. C. L. 129; in The Law of Eminent Domain by Randolph, § 242; in Nichols on Eminent Domain, 2d ed., § 226, and is referred to approvingly by Orgel on Valuation under Eminent Domain, p. 542, note 38; and is specifically followed and applied in the following cases: *Commonwealth v. Combs*, 244 Ky. 204, 50 S. W. 2d 497; *Louisiana Highway Com-*

*mission v. Dunn,* 173 La. 998, 139 So. 384; *Logan County v. Davenport,* 214 Ky. 845, 284 S. W. 98; *Foote v. L. & C. Ry. Co. et al.,* 21 Ohio C. C. 319; *Blair v. Waldo* (Tex. Civ. App.), 245 S. W. 986; *Texas & St. Louis R. R. Co. v. Matthews,* 60 Tex. 215; *P. B. & C. Traction Co. v. Vance,* 234 Ill. 36, 84 N. E. 607; *City of Tulsa v. Lloyd,* 129 Okla. 27, 263 Pac. 152; *Saulsberry v. Ky. & W. Va. Power Co.,* 226 Ky. 75, 10 S. W. 2d 451; *Kukkuk v. City of Des Moines,* 193 Ia. 444, 187 N. W. 209.

Our attention has been called to no cases to the contrary.

Broadly speaking, there are but two questions to be tried in this action: (1) The market value of the land taken—the tract 50 by 363 feet—to be arrived at in harmony with the authorities above cited pertaining to that question. Its location, the quality of the land, and the trees thereon and forming part of it, may be described, but they should not be valued separately. The only value to be placed on the tract is the market value as it was when taken, May 12, 1936. (2) The damage, if any, to the remainder of plaintiff's 8-acre tract by reason of the fact the 50 by 363 foot tract was taken or sold. In determining that the testimony respecting annoyance to plaintiff's family and damages to his house because of work later done on the highway, plaintiff's thought that at some time in the future the tract might be divided in half-acre or acre tracts and sold as a suburban improvement, and the fact that defendant changed the grade of the state highway, with resulting damages, should not be received, for the reasons hereinbefore stated.

The judgment of the court below should be reversed, with directions to grant a new trial, to be conducted in harmony with the views herein expressed. It is so ordered.

HUTCHISON, J., dissents from the second paragraph of the syllabus and the corresponding portion of the opinion.